UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARVIN GILL,

      Petitioner,

v.                                 Case No. 8:04-cv-140-T-23MAP

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Gill petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for capital sexual battery and life sentence. The response (Doc. 12) to the petition is supported by numerous exhibits ("Respondent's Exhibit"). The respondent admits that the petition is timely (Response n.4 at 5 Doc. 12). Gill filed both a reply (Doc. 22) and a request for an evidentiary hearing (Doc. 26). Gill is not entitled to an evidentiary hearing.

### BACKGROUND

Gill was originally charged with eight (8) counts of capital sexual battery of a child under the age of twelve. Four counts involved his girlfriend's daughter (M.H.) and four counts involved the girlfriend's niece (T.S.). The incidents occurred on May 2, 1987, while the two girls were staying at Gill's home and his girlfriend was out shopping. The two girls were seven and eight years old.

Because one of the counts for each victim was dismissed before trial (Respondent's Exhibit 1 Vol. I at 23), Gill was tried for six counts of capital sexual battery. The trial court granted Gill a judgment of acquittal for count three for victim

M.H. and count six for victim T.S. (Respondent's Exhibit 1 Vol. I at 181 and 183).

Regarding M.H., a jury found Gill guilty as charged in count one and guilty of the lesser

included offense of lewd and lascivious act charged in count two (Respondent's Exhibit

1 Vol. I at 179-80).   Regarding T.S., a jury found Gill guilty of the lesser included offense

of lewd and lascivious act charged in count five and guilty of the lesser included offense

of attempted sexual battery charged in count six (Respondent's Exhibit 1 Vol. I at 182

and 184).   Gill received consecutive sentences of fifteen years for each of the two lewd

and lascivious acts, thirty years for the attempted sexual battery, and life with a

minimum of twenty-five years for the capital sexual battery.   The appellate court

affirmed the convictions and sentences.   Gill v. State, 589 So.2d 301 (Fla. 2nd DCA

1991) (table).

Gill's state Rule 3.850 motion for post-conviction relief was denied, a decision the

state appellate court reversed and remanded for an evidentiary hearing.   Gill v. State,

632 So.2d 660 (Fla. 2nd DCA 1994).   On remand, the court granted Gill's motion for

post-conviction relief and ordered a new trial.[1]

Gill's federal petition challenges the outcome of his second trial.[2]   A jury again

found Gill both guilty of a capital sexual battery of M.H. as charged in count one and

guilty of a lewd and lascivious act charged in count two (Respondent's Exhibit 1 Vol. XV

at 2911 and 2910, respectively).   Regarding T.S., a jury again found Gill guilty of lewd

---

[1]   The post-conviction court found that defense counsel violated Gill's right to testify by resting
without allowing Gill to testify.

[2]   Subsequent references to events that occurred at "trial" refer to the second trial unless
specifically noted otherwise.

and lascivious act charged in count five but the jury acquitted Gill of attempted sexual battery charged in count six (Respondent's Exhibit 1 Vol. XV at 2908 and 2909, respectively).  The trial court sentenced Gill to life with a minimum twenty-five years for the capital sexual battery and two consecutive fifteen-year sentences for each lewd and lascivious act conviction (Respondent's Exhibit 1 Vol. XV at 2929-32).  The appellate court affirmed the convictions and sentences in a <u>per</u> <u>curiam</u> decision without a written opinion (Respondent's Exhibit 5).

Gill filed a state Rule 3.850 motion for post-conviction relief (Respondent's Exhibit 8) challenging the results of the second trial.  After an evidentiary hearing, the state court vacated the two convictions for a lewd and lascivious act (Respondent's Exhibit 1 Vol. XXII at 4384).  Gill's appeal was unsuccessful (Respondent's Exhibit 17).

Gill filed the present petition, which asserts sixteen grounds for relief.  The respondent correctly argues that some grounds are procedurally deficient.

## PROCEDURALLY DEFICIENT GROUNDS

A Section 2254 petition for the writ of habeas corpus is justiciable "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  <u>See</u> <u>Wainwright v. Goode</u>, 464 U.S. 78 (1983) and <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1981).  <u>See</u> <u>also</u> <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000) ("The writ of habeas corpus . . . was not enacted to enforce State-created rights."), <u>cert.</u> <u>denied</u> 531 U.S. 1170 (2001); <u>Brannan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

A petitioner must present each claim to the state courts before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995), quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).  <u>Accord</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

<u>Duncan v. Henry</u>, 513 U.S. at 365-66.  <u>Accord</u> <u>Upshaw v. Singletary</u>, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  The respondent argues that Grounds One, Four, Five(A), Six, Ten, and Fifteen either fail to assert a federal claim or Gill failed to alert the state courts that he was asserting a federal claim.

<u>Ground One</u>:

Gill alleges that the trial court erred in denying his motion for judgment of acquittal of sexual battery.  Gill's argument for a judgment of acquittal challenges how

the term "vagina" is defined, specifically what source of information provides the definition:  a medical dictionary, a standard dictionary, or common knowledge.  Gill raised this claim on direct appeal (Ground I, Respondent's Exhibit 2 at 19-29).  How a state chooses to define the elements necessary to prove a crime is a matter of state law.  <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 85 (1986) ("[I]n determining what facts must be proved beyond a reasonable doubt[,] the state legislature's definition of the elements of the offense is usually dispositive. . . .").  To the extent that Gill's argument could assert a federal claim, Gill failed to present a federal claim on direct appeal.[3]  Consequently, because Gill fails to assert a federal claim or failed to "fairly present" a federal claim to the state courts, Ground One is not reviewable on the merits.[4]

<u>Ground Four</u>:

Gill argues that, because the jury failed to specifically find that he was at least eighteen years of age at the time of the capital sexual battery, the trial court erred in sentencing him as a capital offender.  Neither the necessity to return a special verdict nor the form of the verdict presents a federal question.  <u>See</u> <u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules

---

[3]  Such as an argument based on the insufficiency of the evidence.  <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

[4]  Ground One nevertheless lacks merit. Gill's judgment-of-acquittal argument based on the state's failure to prove a medical, technical definition of "vagina" was specifically rejected in both <u>State v. Pate</u>, 656 So.2d 1323, 1325-26 (Fla. 5th DCA 1995) ("Under [a] strict medical definition of vagina, the only way the vagina could be reached is by penetration.  However, subsection 794.011(1)(h) speaks of 'vaginal penetration by, or union with, the sexual organ of another.'  . . .  To adopt the medical definition of vagina would mean there could never be 'union' with the vagina without penetration. This would render the language of section 794.011(1)(h) illogical and absurd."), and <u>Bowden v. State</u>, 642 So.2d 769, 770-71 (Fla. 1st DCA 1994) ("The foregoing observations indicate that although the term 'vagina,' may have a very definite medical meaning, the word as used in the statute is a term of art, which connotes 'a female's private parts.'  Thus, where the male offender is charged with committing sexual battery by penile union or penetration, the statute is broad enough to contain within its prohibition penetration or union with the female victim's sexual organ.").  The trial court had the benefit of both <u>Pate</u> and <u>Bowden</u> at Gill's trial.

provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), cert. denied, 507 U.S. 975 (1993).  Moreover, Gill's argument lacks merit because the age was specifically charged in the indictment.  See Baker v. State, 604 So.2d 1239 n.2 (Fla. 3rd DCA 1992) ("It is not necessary that the jury make a finding by a special verdict that the defendant is eighteen years of age or older where a capital offense is specifically charged and proved.").

To the extent that Gill argues that his conviction for capital sexual battery is invalid because the jury failed to find an element of the offense (that he was at least eighteen at the time of the offense), the claim was forfeited when defense counsel agreed to the verdict form.[5]  To the extent that Gill argues that his sentence is based on a fact not found by the jury (that he was at least eighteen at the time of the offense), the claim is precluded because his conviction was final before Blakely v. Washington, 542

_____

[5]  At sentencing, the trial court found that Gill's objection to the verdict form was forfeited by counsel's earlier approval of the verdict form.

[Defense Counsel]:  Your Honor, Mr. Gill has called my attention to Baker versus State at 604 So.2d 1239.  The point being dealt with there is that the verdict forms used by the jury did not include a finding that he was over the age of 18.  . . .  And that case indicates that there must be such a finding.  And in the absence of such a finding, it would be bounced down to less than a capital offense.

The Court:  Okay.  State, response to that argument?

[The Prosecutor]:  It is my recollection that was agreed upon.

[Defense Counsel]:  The evidence did not — there was evidence that stated that he was over 18.  That was not questioned.  The point is that what the jury took in with them did not include that essential finding.

The Court:  All right.  Just for the record, let me indicate there was an agreement, the defense chose the language in the verdict form with the understanding that that would be sufficient to charge Count 1 of the indictment as a capital sexual battery.  And that was the understanding, that's my recollection, so I'll deny that based upon that allegation.

Respondent's Exhibit 1 Vol. IXX at 3808-09.

U.S. 296 (2004).  See In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("Because

Blakely, like Ring [v. Arizona, 536 U.S. 584 (2002)], is based on an extension of

Apprendi [v. New Jersey, 530 U.S. 466 (2000)], Dean cannot show that the Supreme

Court has made that decision retroactive to cases already final on direct review.").

Ground Five (A):

    Gill alleges in Ground Five, subpart A, that the state failed to prove that the

offense occurred within the dates stated in the "amended statement of particulars."

The respondent correctly argues that, even if the issue asserted a federal claim, Gill

failed to present the issue as a federal claim at trial or on direct appeal.[6]  Consequently,

subpart A of Ground Five is not reviewable on the merits.

Ground Six:

    Gill alleges that the trial court erred by not letting Gill voir dire the victims before

each testified.  To the extent that this claim could assert a federal violation, Gill failed to

fairly present a federal claim to the state courts.  Gill raised this claim as Ground VI on

direct appeal (Respondent's Exhibit 2 at 42-44).  Although Gill now argues that the trial

court's ruling violated his Sixth and Fourteenth Amendment rights, Gill failed to

federalize this claim on direct appeal; Gill's brief on direct appeal asserted a violation of

state law only.

## REVIEW ON THE MERITS

    Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

---

[6]  Gill exhausted the related claim of ineffective assistance of counsel, which is addressed later, but Gill never exhausted a sufficiency of the evidence claim; Gill argues in his reply that Ground Five should be construed as asserting a sufficiency of the evidence claim.

governs this proceeding.  <u>Wilcox v. Florida Dep't of Corrections</u>, 158 F.3d 1209, 1210

(11th Cir. 1998), <u>cert. denied</u>, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Gill's convictions and sentences were affirmed on direct appeal in a per curiam decision without a written opinion (Respondent's Exhibit 5), and the denial of his subsequent Rule 3.850 motion for post-conviction relief was likewise affirmed on appeal in another per curiam decision without a written opinion (Respondent's Exhibit 17).  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Gill has the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact in the trial court's rejection of Gill's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 9).  However, the state appellate court's

affirmance of Gill's conviction without a written opinion on direct appeal offers neither a finding of fact nor a legal analysis to which to defer.[7]

## DIRECT APPEAL CLAIMS

Grounds Two and Three are related.  Gill alleges in Ground Two that he was forced to trial with an attorney with whom he had a severe conflict of interest.  In Ground Three Gill alleges that the trial court erred by denying his right to represent himself.  The respondent argues that no actual conflict existed and Gill never unequivocally asserted his right to self-representation.  The record supports the respondent's position but also shows Gill's dissatisfaction with counsel's representation.

Some background is required to place these claims in proper perspective.  Gill's claims of attorney conflict and denial of self-representation involve events at Gill's second trial, the trial that resulted in the conviction Gill now challenges.  William G. Dayton, Esq. ("Dayton"), represented Gill at trial, but his representing Gill pre-dates the second trial.

Gill filed a <u>pro</u> <u>se</u> Rule 3.850 motion for post-conviction relief challenging the convictions from his first trial.  Gill successfully appealed the summary denial of his motion.  On remand, the motion was set for an evidentiary hearing.  Dayton was appointed in March, 1994, to represent Gill at the evidentiary hearing (Respondent's Exhibit 1 Vol. XIII at 2573).  Gill represents[8] that because Dayton refused to prepare for

---

[7]  As a general rule, exceptionally long quotations from pretrial and trial proceedings, as well as state court opinions, are avoided.  However, because of the nature of Gill's claims, exceptionally long quotations are required; Gill's claims are not properly understood and adequately reviewed without the extensive quotations.

[8]  See "Motion to Appoint Substitute Counsel" for the subsequent retrial  (Respondent's Exhibit 1 Vol. XIV at 2717).

the evidentiary hearing but instead relied completely on Gill's work product, Gill

requested permission to act as co-counsel during the evidentiary hearing (Respondent's

Exhibit 1 Vol. XIII at 2588).  The post-conviction court granted the motion at the

beginning of the evidentiary hearing and allowed Gill "to participate as co-counsel"

(Respondent's Exhibit 1 Vol. XIV at 2597).  The combined efforts of Dayton and Gill

prevailed in challenging Gill's convictions.

> Pursuant to the Mandate issued by the District Court of Appeal of Florida, Second District, on July 25, 1994, this cause came on for an evidentiary hearing regarding the Defendant's right to testify.  The Defendant, Marvin Gill, was present.  The Defendant was represented by his court-appointed attorney, William G. Dayton, Esquire.  Additionally, the court considered Defendant's pending Motion to Allow Defendant to Participate at Evidentiary Hearing as Co-Counsel and granted said Motion.  Thus, Defendant participated in the evidentiary hearing as co-counsel.  The Defendant testified at the evidentiary hearing and called three witnesses. The state called one witness.  The Defendant's court-appointed attorney as well as Defendant himself presented argument to the court.  The State presented argument to the court.  Lastly, both the Defendant's court-appointed attorney and the Defendant himself presented rebuttal argument to the court.
>
> . . .
>
> 2.  Both Defendant and [defense counsel] agree that prior to trial they . . . frequently discussed trial tactics . . . and . . . whether Defendant would . . . testify.
>
> 3. [D]efendant's testimony was rehearsed many times [and,] in doing so, [defense counsel] pointed out . . . the problems . . . created by Defendant's testimony.
>
> 4.  Prior to trial, the State of Florida failed to file a Williams rule notice. The [trial judge] advised [defense counsel] prior to trial that . . . the calling of [defense] witnesses would open the door to Williams rule evidence. [Defense counsel] had been concerned . . . that Williams rule witnesses would be a major blow to the defense.  Going into trial . . . [defense counsel] and Defendant agreed that Defendant would not testify.
>
> . . .

6.  The last day of trial, Defendant began insisting that [defense counsel] call many of his witnesses. [Defense counsel] resisted, . . . feeling that calling witnesses was not good trial strategy.

7.  [Defense counsel] described Defendant's desire to testify [was] being used as a lever . . . to coerce [defense counsel] into calling witnesses . . . . After much back and forth discussion, [defense counsel] and Defendant agreed on the witnesses to be called.

8.  [After a bench conference concluded, defense counsel] returned to counsel table where Gill was seated and, without consulting or conferring with Gill, announced to the court, "The defense rests."

9.  At no time did Gill expressly waive his right to testify. . . .  [Defense counsel] did everything in his power to persuade Gill not to testify . . . [because] it would be "suicide" for Gill to testify.

. . .

12.  By failing to confer with his client, [defense counsel] failed to determine, at the point while there was still opportunity to do so, whether Defendant desired to testify.  And, in light of the fact that Defendant had prepared for months to testify and continued to insist that he wanted to testify right up to the final day of trial, it is clear that [defense counsel] did not respect Defendant's wishes in this regard.  Further, by failing to confer with his client one final time before announcing to the court that the defense would rest, [defense counsel] deprived Gill of the ability to choose whether or not to testify in his own behalf.

. . .

It is therefore **ORDERED AND ADJUDGED** that the Defendant's motion for post-conviction relief should be and the same is hereby **GRANTED**. The conviction is vacated and set aside.

(Respondent's Exhibit 1 Vol. XIV at 2679-81).  On September 29, 1994, the state was allowed ninety (90) days to retry Gill.

Dayton was appointed to represent Gill for the retrial (Respondent's Exhibit 1 Vol. XIV at 2688) and Gill requested permission to continue as co-counsel  (Respondent's Exhibit 1 Vol. XIV at 2686).  Dayton consented to the co-counsel arrangement

(Respondent's Exhibit 1 Vol. XIV at 2691).  At the December 5, 1994, calendar call (Respondent's Exhibit 1 Vol. XV at 2936-37), the defense requested a continuance until the following March because the defense was not ready to proceed.[9]

At the end of January, 1995, Gill moved for the appointment of substitute counsel (Respondent's Exhibit 1 Vol. XIV at 2717-24), and a couple weeks later Dayton moved to withdraw (Respondent's Exhibit 1 Vol. XIV at 2729).  Both motions were orally denied  following a hearing[10] in February, 1995 (Respondent's Exhibit 1 Vol. XIX at 3816-37), and denied in written orders (Respondent's Exhibit 1 Vol. XV at 2845-46).  At the March calendar call, trial was again continued at Gill's request after the court denied Gill's request for self-representation, a request in which Gill sought self-representation until he was able to hire new counsel.

> MR. DAYTON:  As [the prosecutor] has pointed out, Mr. Gill has filed a motion to be allowed to proceed pro se, representing himself —
>
> THE COURT:  We've been through that, haven't we?  That's nothing new.
>
> MR. DAYTON:  No, Your Honor, although his former motion was to discharge me and to appoint different counsel.  He's now asking to have me discharged and to let him represent himself.  I would submit that this is further evidence of a complete breakdown in communication between Mr. Gill and myself, and I would renew my motion for leave to withdraw.
>
> As to the second matter [the prosecutor] mentioned, I have spoken with a lawyer in Tampa, Mr. Dolan I believe his name is, who has spoken with friends and relatives of Mr. Gill about being retained.  As of about 11:30 this morning I spoke with him, and no retainer had been received and no decision has been made by him and the lawyer whom he intended to associate as to whether or not they would in fact accept the case.  They

---

[9]  According to Gill's "Motion to Appoint Substitute Counsel" (Respondent's Exhibit 1 Vol. XIV at 2717-24), the defense was unprepared because of Dayton's complete failure to prepare for trial.

[10]  Dayton denied Gill's allegation that Dayton had failed to prepare for trial (Respondent's Exhibit 1 Vol. XIX at 3823-24).

are seriously considering it and there are discussions ongoing with persons offering to put up money on behalf of Mr. Gill.

THE COURT:  Well, we're mixing issues.  The motion to appoint in large part, if not exclusively, basically reiterates and reincorporates all the previously filed motions to appoint substitute counsel.  That was heard, that was denied.  This kind of activity shows that the defendant himself really is not knowledgeable enough to proceed in these matters if he filed a duplicitous motion a couple of weeks after the other motion was disposed of.

Secondly, by the Court's observance of your conduct and handling of this case, even today I can see that you are competent and you are well kept abreast of this case.  The fact that you may or may not be able to spend the time and communicate everything that you are doing to Mr. Gill is not enough to discharge an attorney who is obviously competent in performing the duties.

Now, if Mr. Gill chooses to replace you with some privately retained or funded counsel of his choice that's his prerogative.  I certainly would not interfere with that, but it is set for trial the 13th.  Whether that attorney can prepare for it in that time or not, I don't know.  It hasn't happened, it's moot. What's the State's response on these matters?

[THE PROSECUTOR]:  Your Honor, you've covered basically what I was going to argue with the exception that Mr. Gill is, again in my estimation, attempting to build a record for himself.  His argument basically is that since you're forcing me to go to trial with an incompetent or unprepared lawyer then I may as well go to trial on my own.

. . .

THE COURT:  Well, it's old territory in essence.

. . .

THE DEFENDANT:  Your Honor, I would like to bring to the Court's attention, this motion that I'm filing to represent myself is not a duplicate motion that I have filed before; this is a separate motion.  I have filed a motion to dismiss counsel and to reappoint a new attorney.  This motion is different in the fact that it addresses that I am going to — I would like to dismiss my — Mr. Dayton, my appointed attorney, and to represent myself.

I have covered everything that I can possibly think of in the motion to prove that Mr. Dayton has not prepared himself for this trial, and I am certainly, definitely entitled to represent myself if I choose to do so.  I believe that this is covered under the provisions of Faretta v. California and Gideon v. Wainwright and several more of the constitutional cases that will give me the right to represent myself.

The point that I'd like to make out to prove my point that Mr. Dayton has not prepared this thing, I have ordered an index of the court's proceedings from the time that Mr. Dayton was appointed until the present time.  I believe Mr. Dayton has filed three motions.  He has not deposed any witnesses for the State or defense.  He has not made any preparations other than what we are going through today to obtain any expert witnesses needed by the defense.  He has not investigated any claims that I have made as far as the defense on the outside.  And of course, it's quite obvious by the record that he has not filed any type of pretrial motions to preserve the record or preserve my appellate rights in this case.

So it leaves me in a position to where I am forced to either be represented by Mr. Dayton which [sic] I know is not prepared or to represent myself at this time and which I believe that I have a perfect right to do so.

In addition to that I am also asking for a continuance in the March 13th trial.  Both of these motions have been filed with the court. Number one, so that I can make the necessary preparations to prepare the case if I handle it.  And, number two, I am in the process of trying to retain private counsel which is Mr. Gary Goldman from Tampa and his associate.  We have approximately half the money raised; we're in the process of trying to raise the remainder in order to retain these attorneys.  Therefore, this would be another reason that I'm asking for the continuance in order for them to prepare themselves to handle the case as soon as we can get the balance of the retainer to them.

. . .

Based on these things I am asking too for the Court to allow me to be my own attorney until such time as I can retain the necessary counsel from Tampa and also to continue the case so that we have the necessary time to prepare ourselves.

. . .

[THE PROSECUTOR]:  Your Honor, again, as Mr. Gill points out the Faretta decision leaves Mr. Gill certain qualified rights to represent

himself.  One of the prerequisites of that is whether or not he could adequately defend himself.  In light of the charges that are facing Mr. Gill, the fact that he has once previously been convicted on this evidence, and frankly in light of the comments to the Court today and in Mr. Gill's antics up until this point it should be clear that he is not capable of representing himself in a trial of this magnitude.

And the fact that he's trying to hire counsel outside is further evidence of his desire not to represent himself.

THE COURT:  My previous comments before, the State's comments before and now, really are well taken.  In <u>Faretta v. California</u>, 422 U.S. 806, 1995 S.Ct. 2525 (1975), the Supreme Court held that the Fifth Amendment of the United States Constitution allowed the defendant the right to represent himself, however, because there are traditional benefits associated with representation by counsel the accused must be made aware of the dangers and disadvantages or self-representation so that his waiver of counsel is knowing and intelligent.

It is obvious that Mr. Gill's attempted waiver of counsel is not knowing and intelligent.  I cannot accept a waiver where it appears that the defendant is unable to make an intelligent and an understanding choice because of either his mental condition, age, education, experience, and primarily the nature or complexity of the case or other factors which this record clearly demonstrates exists.

This case is set for trial Monday.  That's a major factor.  There's no way Mr. Gill can be competent to represent himself under these circumstances.

(Respondent's Exhibit 1 Vol. XV at 2972-80).  Trial was re-set for July 17, 1995.  On July 14th Steven Herman, Esq., filed a notice of appearance as retained counsel.  A jury was selected as scheduled on July 17th.  The following morning started with extensive discussions about both Gill's dissatisfaction with Dayton and the possibility of Gill representing himself.  The trial judge resolved the dilemma to the mutual satisfaction of Gill and his counsel.[11]

---

[11] Extensive quotation from the record is required to fully understand the trial court's dilemma and resolution of Gill's qualified desire to both proceed pro se and dismiss Dayton.

[THE PROSECUTOR]:  Judge, I'm going to object to Mr. Gill — he's got a lawyer that the county's paying for.  He's got a lawyer that his family's paying for.  And for him to come in here now and start raising motions at 9:35 in the morning and argue his own case is an attempt to delay this trial, stall this trial, and turn it into a literal circus.  I object to his participation other than to answer questions directed — asked by the Court or through his attorneys.  [O]ne's been appointed, one's been retained to represent him.

. . .

There's an additional ground here to the objection.  There was a motion raised by Mr. Gill to be appointed co-counsel.  That motion was denied by the court on the representation . . . by Mr. Dayton that he would consult with Mr. Gill and use Mr. Gill's input in making tactical decisions.

THE COURT:  That's correct.  That's old ground.  However, I don't know what Mr. Gill is going to say . . . .  So until we . . . give him an opportunity to say something, we can't make an intelligent decision.  What is it you want to say, sir?

THE DEFENDANT:  Your Honor, I would like to request a renewal of my motion to dismiss my court appointed counsel, Mr. Dayton . . . [because] Mr. Dayton has not, and I repeat, has not prepared a defense that I have outlined for him and we have discussed for over a period of one and a half years.

THE COURT:  Let me ask you a question.  Do you want to dismiss Mr. Dayton and continue the trial with Mr. Herman?

THE DEFENDANT:  That would be . . . my expectations at this point. . . .

THE COURT:  Mr. Dayton, any objections to the motion?

MR. DAYTON:  Your Honor, if Mr. Gill doesn't want me and the trial can go on, I will be happy to leave at any time.

THE COURT:  All right.  For purposes of understanding what you're saying, are you otherwise prepared, ready to proceed?

MR. DAYTON:  Yes, Your Honor.

THE COURT:  Mr. Herman, are you able to pick up the reins and proceed, and are you prepared to continue this trial today and finish it this week as anticipated and scheduled without Mr. Dayton's participation?

MR. HERMAN:  Well . . . I was retained last Tuesday to assist Mr. Gill.  It's always been clear between myself and my client that I was going to appear as co-counsel only.  I could never take the lead in this case because I have not read the depositions.  I've read only the trial transcript.  I've never reviewed the court file in this case and . . . the purpose was for me to assist Mr. Dayton in the representation of Mr. Gill.

THE COURT:  So I understand your response to say, no, you cannot participate exclusively without Mr. Dayton's continuation?

MR. HERMAN:  I could not act as lead counsel or primary counsel in this case.  No, I could not.

THE COURT:  It's my observation that Mr. Dayton is participating, effectively doing his job, doing the things that normally need to get done, and he has been doing that.  Is there anything that you'd like to add, Mr. Herman, in that regard?

MR. HERMAN:  Well, the only thing that I can tell the Court is that I observed what appears to be an irreconcilable conflict between Mr. Dayton and Mr. Gill about how this case is going to be presented.  Mr. Dayton has strong feelings about how the case should be presented and so does Mr. Gill.  And they appear not to be able to reach a compromise . . . .

THE COURT:  There are general strategy decisions that ordinally the attorney would make, as opposed to substantive matters that the defendant would have exclusive domain over, such as whether or not he wants to testify?

MR. HERMAN:  [I]t would be the former . . . [b]ut . . . what I would point out to the Court, that in my review of the proceedings that got us back to this trial, you're having the same sort of difficulties or problems between counsel and client as there were in the first case that were not reconciled and . . . to a great extent . . . brought this case back for a retrial.  And I see some very valid points in what Mr. Gill wants to do in this case.

THE COURT:  So it's a difference of opinion on strategic issues ordinarily decided by the attorney?

MR. HERMAN:  If you want to generalize.

THE COURT:  That happens probably in most cases . . . .  Mr. Gill, from what I understand, your attorney, Mr. Dayton, is ready, willing and able to proceed.  He is prepared, he has been prepared.  Mr. Herman is not

ready, willing and able to proceed exclusively as you attorney.  Now, do you wish to proceed under those conditions with you and Mr. Herman only, or do you wish to proceed with Mr. Dayton or, of course, is it you intent to fire Mr. Dayton and get a continuance and have this trial rescheduled . . . ?

THE DEFENDANT:  Your Honor . . . this tactic that the State is alleging that I'm here to postpone and delay this trial is certainly not what I'm trying to do.  I've been ready to go to trial since the first day that I was remanded back here from the state institution.  I've been working on this for five and a half years, and I know exactly what needs to be done on this thing; not only by case law, but what witnesses.

Just let me give the Court an example of what has taken place.  Mr. Dayton has not interviewed not one witness that appears on our witness list to be able to sit down and know what these witnesses are going to testify to if they should be called to trial.  I have begged Mr. Dayton to renew the motion for experts that is desperately needed in this trial to form a proper defense.  He ignores that.  He has not done anything towards getting those except sit here and tell you that he needs an expert at our meeting 17 days ago, and provided no case law to you to even indicate that you had the authority to appoint expert witnesses.

THE COURT:  Well. Before you get too far afield in depth, I think the question I asked you is what do you want to do.  Do you want to proceed with Mr. Herman, because if that's what you want to do — is it your intent that you proceed without Mr. Dayton, or are you attempting to continue the case without Mr. Dayton and let Mr. Herman resume the reins?  What is it that you want me to do for you at this point?

THE DEFENDANT:  Judge, I'm trying to get a trial that I have a proper defense.  It appears that Mr. Dayton does not want to present any defense.

. . .

THE COURT:  I need to understand what it is you're — see . . . when you avoid giving a direct answer, that reaffirms my prior observation that maybe there's some obstreperous behavior going on here, you're trying to get a delay or a continuance.

Okay.  Let me ask the question again.  Are you ready to proceed to trial today with you and Mr. Herman only without Mr. Dayton?

THE DEFENDANT:  If Mr. Dayton plans on putting on no defense, yes, Your Honor.  If he plans on putting on a defense, then he's welcome to stay aboard.

THE COURT:  Well . . . there's a confidence of communication between you and your attorney.  I can't predict —

THE DEFENDANT:  He informs me that he plans on putting on no defense.  That's what he informs me; so therefore, I cannot proceed with an attorney who is going to put no defense on.

THE COURT:  Well, you have Mr. Herman, of course.  You have another attorney.  You have access to another attorney.

THE DEFENDANT:  From my observation, there seems to be somewhat of a conflict between these two attorneys as to what needs to be done in the first place.  So, therefore, I'm put between a rock and a hard place on having to choose whether I should go to trial without having a defense or go to trial with a totally unprepared attorney who has made no attempt whatsoever to prepare himself for this trial.

THE COURT:  [Y]ou're in a situation where that may be a matter of opinion from your perspective.  I think Mr. Dayton does seem to be thoroughly familiar with your case.

. . .

THE DEFENDANT:  Your Honor, a solution to this problem may be that I request that I be appointed my own counsel and —

[THE PROSECUTOR]:  Objection, Judge.  We've heard this motion.

THE COURT:  Let him finish so I understand where he's going.

THE DEFENDANT:  Let Mr. Dayton be known as a co-counsel and Mr. Herman will assist me in my attempts to be counsel.

THE COURT:  Okay.  I'm not sure I understood what you just said.

. . .

You want me to appoint you another attorney?

THE DEFENDANT:  No, sir.  I am not asking for another attorney.

THE COURT:  What are you asking for?

THE DEFENDANT:  I'm asking for the Court to appoint me as my own counsel, self-representation.

THE COURT:  Okay.  We've been that route before.

THE DEFENDANT:  I understand that.  I'm renewing my motion.

THE COURT:  And for the reasons I stated before, which I continue to believe are accurate today, that wouldn't be appropriate.

THE DEFENDANT:  Those reasons are what, sir?

THE COURT:  I've already stated them.  We're wasting a lot of time rehashing things.

THE DEFENDANT:  I'm renewing my motion to be my own counsel, Mr. Dayton be co-counsel, Mr. Herman to assist me, is my motion to the Court.

THE COURT:  Does either lawyer for the defense have anything to add . . . ?

. . .

MR. HERMAN:  Well, Judge, it was my suggestion just a moment ago that he ask the Court to consider that.  I think . . . Mr. Gill is as knowledgeable about the law as any defendant I probably have ever had contact with over the years.  He's obviously prepared, spent more time on this case than any lawyer who's ever represented him, or probably sat on the other side of the table from him.  I guess if there's any defendant that might have a chance to represent himself, it would be Mr. Gill.

My thought was, rather than to have the jury question what happened to Mr. Dayton, and if you let Mr. Gill take the lead in this case and let him make the decisions about the presentation of the defense, Mr. Dayton can assist him in the areas in which Mr. Dayton is conversant and . . . I will assist in general.

. . .

THE COURT:  Are you willing to place any restrictions on that, such as, someone else will cross-examine the victims?

THE DEFENDANT:  I have no objection to that, Your Honor.

THE COURT:  Who is going to cross-examine the victims?

MR. HERMAN:  It would be Mr. Dayton.

THE COURT:  All right.  You have no objection to that?

THE DEFENDANT:  I have no objection to that.

[THE PROSECUTOR]:  I do, Judge.

THE COURT:  You want to be co-counsel for purposes of participating in the strategy decisions, is that correct?

THE DEFENDANT:  I'm not asking to be co-counsel.  I'm asking to be my own counsel.  As Mr. Dayton says, co-counsel.

THE COURT:  You see, when you say things like that, it makes me understand that even though you may understand your particular case, you're not versed enough in procedural matters to understand how to effectively act as an attorney in the courtroom.  And that's what you're asking me to allow you to do.

THE DEFENDANT:  What we just discussed about cross-examining the witnesses, the reason I need Mr. Dayton as co-counsel, because it would be obvious to anyone that I could not ever effectively cross-examine the victims themselves.  I realize that my own self.  This is the reason that I need Mr. Dayton to do that for me, with the assistance of Mr. Herman.

The only thing that I'm asking for self-representation for is to be able to make the decisions in the strategy of my case, which I believe I know more about than anybody in this room.

. . .

MR. DAYTON:  Without going into confident communications, Your Honor, that is the crux of the dispute.

THE COURT:  All right.  Let's do this.  I'm inclined, if Mr. Gill is willing to, and wants to act a co-counsel for purposes of participating in strategy decisions only to give him standing as an attorney so that his decision will be given equal weight with his attorney's but not to participate in the cross-examining of witnesses or argument.

THE DEFENDANT:   That's fine.

. . .

[THE PROSECUTOR]:  I believe, with all due respect, that you're creating a quagmire.

THE COURT:  This case was a quagmire before I got it, so I don't think I can create a quagmire when there's one there.

[THE PROSECUTOR]:  One that we would never be able to get out of. Because . . . in dealing with the history of this case, Mr. Gill's participation in this case, if you were to . . . appoint him as co-counsel for the purpose of making strategy decisions, and Mr. Dayton and Mr. Herman are there to advise, and you have three of them who disagree on a particular strategy, Mr. Gill is convicted [and] sentenced . . . unless we have a record of every conversation that counsel was involved in, how in the world will we ever refute allegations in the future by Mr. Gill that he wanted to do something; he was his own lawyer, and yet he was overpowered by the wills of the two people appointed or hired to represent him?

THE COURT:  I understand, but we've got that problem now, whether we like it or not.  It's more severe right now than it might be if the restrictions are reasonably applied and utilized . . . with common sense.

. . .

[THE PROSECUTOR]:  [I] think that Mr. Gill is very cleverly contriving this position to posture himself into a 3.850 and to deprive us.

. . .

MR. HERMAN:  I don't think this is a contrivance.  I think this man truly believes that the defense needs to be put on in a certain fashion and . . . to be found not guilty with respect to all four of these charges.  [T]his isn't a technical thing that he's coming up with.  The man is fighting for what he believes is a fair trial.  I just wanted to say that.

THE COURT:  All right.  Mr. Dayton, do you have anything to add?

MR. DAYTON:  Your Honor, basically, that is correct.  There is a real sharp diversion opinion [sic] as to how we should proceed with the view towards an acquittal.

THE COURT:  Okay.  Let me ask you a question.

MR. DAYTON:  Mr. Gill believes that my thoughts on that matter are totally wrong and incompetent.

THE COURT:  All right.  But those are dealing with the tactical or the strategic decisions, correct?

THE DEFENDANT:  Yes.

THE COURT:  Ordinarily it would be your domain to make.  But if you have co-counsel for that decision, and he makes that decision, and he's also the client and you acquiesce to his decision, and you place these matters on the record as you go along, then you're not incompetent, are you?  And maybe the co-counsel would be the one, if anyone, if it didn't work out, would be incompetent, and he would have no grounds to complain about that.  Now, could you handle that situation?

MR. DAYTON:  There may still be some problems with the view, with the difference of opinion as to whether or not the defense witnesses should be questioned extensively and coached before putting them on.

THE COURT:  You could put that on the record without the presence of the jury every step of the way so there is a record of what's going on, Mr. Gill making the final decision, no pros and cons, no possible penalties, knowing that he is not an attorney and he wants to proceed in that fashion.  And today he seems to be . . . coherent.  He's spoken to his private counsel.  Private counsel seems to be standing up for his belief in that Mr. Gill can handle that situation.  Can you handle that situation?

MR. DAYTON:  Your Honor, I'm at the disposal of the Court.

THE COURT:  So you're saying that's a yes, then?

MR. DAYTON:  Yes, your Honor.

THE COURT:  Mr. Gill —

THE DEFENDANT:  I'm willing to work with Mr. Dayton.  I have nothing against Mr. Dayton.  I'm just fighting for my life.

THE COURT:  Well, I appreciate that, but . . . I've got to look at the procedural safeguards, if enough procedural safeguards are instituted, and you are not in a situation where your own incompetency sells you down the river, then I don't want to do this trial again.  That's the whole object here.  All I want is to give you the same thing; that's a fair trial.  Win,

lose or draw, it doesn't make any difference to me.  I've got to make sure procedurally that you are able to operate under those conditions.

You've got a private attorney, you've got a court appointed attorney.  You want to participate.  You're willing to take the stipulations that we just set forth, if the attorneys can handle that — I understand the State is objecting, but I don't think that would cause unnecessary delay with those stipulations.  The other way, I could see problems.  And if you can do these things quickly, I'm not going to entertain a delay of this trial.  I'm willing to possibly give you a shot at that if it doesn't cause a delay.  If I find out that you being allowed to act as co-counsel is going to delay this trial, inordinate consultations, that you don't understand things and be bickering and arguing among your selves, we get in that situation, you're going to be back in as a defendant only, not as a co-counsel.  Because this trial's got to move along.  There's no reason to delay this thing.

. . .

If you can take those stipulations that you — are on there for strategy purposes only, not for actual participation as an attorney in the trial, but to be co-counsel, your own co-counsel, the strategy decision-making processes that an attorney would otherwise be, if you can make those decisions, act in that capacity, limit it to that capacity, provided it doesn't create any delay or obstruction, that this case goes forward with . . . reasonable diligent speed as ordinarily should occur in any case.  That's acceptable to you, Mr. Gill?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Dayton, that's acceptable?

MR. DAYTON:  Sure.

THE COURT:  Mr. Herman, that's acceptable?

MR. HERMAN:  Let me make sure he understands something that might come up in that regard.

[THE PROSECUTOR]:  Am I also to understand, Your Honor, that these tactical decisions in which Mr. Gill is playing a part, will become a matter of record, particularly in light of those areas where there is dissension as to what should be done?

THE COURT:  Well, I think, from what we understood, Mr. Dayton is going to be placing these disagreements on the record as we go outside the presence of the jury.

. . .

All right.  Mr. Herman, everything under control?

MR. HERMAN:  That's fine.

THE COURT:  Mr. Gill, are you satisfied?

THE DEFENDANT:  Yes.

THE COURT:  I understand the State's not happy about it, but we're going to protect this case the way we just discussed.  Yes, sir.  Let's work.

THE DEFENDANT:  Mr. Dayton has now renewed the motions for our experts.  I don't know whether you gave an opinion on that.

THE COURT:  Yeah, he's renewed it.  The original rulings, if you were listening, are applicable.  I'm not receding, especially in the middle of trial.

THE DEFENDANT:  Would you care to see the case law on that, sir?

THE COURT:  No.  You know, here's the problem.  Remember what I just told you?  You can't act as an attorney beyond the strategy.  You were willing to take that stipulation.  If you're not willing to take that stipulation, tell me now.

All right.  Let's proceed in the courtroom.

(Respondent's Exhibit 1 Vol. XVII at 3235-57).  Both Dayton and Herman participated in the examination of witnesses and arguments to the court.  Gill regularly conferred with his attorneys during trial and the attorneys conveyed to the court Gill's concerns about the handling of the case; at one point the court let Gill present his specific objections to Dayton's failure to adequately cross-examine witnesses (Respondent's Exhibit 1 Vol. XVIII at 3476-81).

Gill must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The two questions Gill presents are whether he was forced to proceed to trial with an attorney with whom he had a severe conflict of interest (Ground Two) and whether the trial court erred by denying his right to represent himself (Ground Three). The trial court recognized that Gill's right to self-representation is controlled by Faretta v. California, 422 U.S. 806 (1975). Consequently, the state court's decision is not contrary to a controlling Supreme Court decision. The question becomes whether the trial court unreasonably applied Faretta or unreasonably determined the facts. The answer to both is "No."

Faretta requires an unqualified assertion of the right to self-representation. "Before a court permits a defendant to represent himself at the trial, the defendant must clearly and unequivocally assert the right of self-representation." Fitzpatrick v. Wainwright, 800 F.2d 1057, 1064 (11th Cir. 1986), citing both Faretta v. California, 422 U.S. at 835, and Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir.), cert. denied, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). Accord United States v. Evans, 478 F.3d 1332, 1340 (11th Cir.), cert. denied, ___ U.S. ___, 128 S.Ct. 257 (2007). Placed in proper perspective, each time Gill invoked his right to self-representation he was seeking to obtain either new counsel or a continuance, or to control trial strategy. See, e.g., Respondent's Exhibit 1 Vol. XV at 2978 ("Based on these things I am asking too for the Court to allow me to be my own attorney until such time as I can retain the

necessary counsel from Tampa and also to continue the case so that we have the necessary time to prepare ourselves.") and Vol. XVII at 3247 ("The only thing that I'm asking for self-representation for is to be able to make the decisions in the strategy of my case, which I believe I know more about than anybody in this room."). Gill's primary complaint about Dayton was whether to present a defense, and if Dayton agreed to present a defense, Gill was satisfied with proceeding to trial with Dayton as counsel. See, e.g., Respondent's Exhibit 1 Vol. XVII at 3252 ("I'm willing to work with Mr. Dayton. I have nothing against Mr. Dayton.") and Vol. XVII at 3256 ("If he plans on putting on a defense, then he's welcome to stay aboard."). Consequently, Gill never clearly and unequivocally waived his desire for counsel.

Gill never showed that Dayton had a conflict of interest. Instead, the conflict was purely a difference of opinion on strategy; Gill and Dayton disagreed on which trial strategy presented the best chance for a favorable verdict. See, e.g., Respondent's Exhibit 1 Vol. XVII at 3238 ("MR. HERMAN: Mr. Dayton has strong feelings about how the case should be presented and so does Mr. Gill.") and Vol. XVIII at 3493 ("MR. DAYTON: The way this whole thing has developed has simply made it impossible to conduct the case in anything vaguely resembling what I perceive it should be conducted to protect Mr. Gill's interest."). The trial court patiently listened to the reported problems and fashioned a compromise that satisfied both Gill and his attorneys. "COURT: Mr. Gill, are you satisfied? THE DEFENDANT: Yes." (Respondent's Exhibit 1 Vol. XVII at 3256). Consequently, Gill was neither forced to trial with an attorney who had a conflict of interest (Ground Two) nor denied his right to self-representation (Ground Three). Instead, Gill received the benefit of both self-representation (the trial court authorized

Gill to decide which defense witnesses to present and allow Gill to present argument to the court outside the presence of the jury) and counsel (Dayton and Herman conducted opening and closing statements and the examination of witnesses).  In essence, the compromise the trial court fashioned afforded Gill more rights than he was entitled to receive.  See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (Faretta does not require a trial judge to permit "hybrid" representation . . . .).  The state court's rejection of these claims was neither an unreasonable application of Faretta nor an unreasonable determination of the facts.

Related to Grounds Two and Three, Gill alleges that Dayton rendered ineffective assistance by failing to pursue the planned defense.  Gill's numerous post-conviction claims of Dayton's ineffective assistance of counsel are next.

### POST-CONVICTION CLAIMS OF
### INEFFECTIVE ASSISTANCE OF COUNSEL

Gill claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the

> deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Gill must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden, Gill must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Strickland v.  Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland v. Washington,  466 U.S. at 690-91.  Gill cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

The state court conducted an evidentiary hearing and denied Gill's claims of ineffective assistance of counsel (Respondent's Exhibit 9).  Because the state court correctly applied Strickland's deficient performance and prejudice test, Gill cannot meet

the "contrary to" test in Section 2254(d)(1).  Gill instead must show that the state court

unreasonably applied Strickland or unreasonably determined the facts.

Ground Thirteen:

Gill alleges that Dayton "elected to disregard the agreed upon (10) point plan of

defense by deciding to do nothing and refusing to put on a defense . . . ."  The state

post–conviction court rejected each of Gill's ten allegations of Dayton's ineffectiveness

in failing to prepare and present a defense (Respondent's Exhibit 9 at 2-4):

> Defendant claims that counsel agreed to follow a 10-point defense plan
> promulgated by Defendant.  In his Memorandum of Law, Defendant gives
> a detailed, point by point description of how counsel failed or refused to
> follow the plan.  Although each point will be addressed briefly in turn, some
> general discussion is first warranted.  A review of the transcripts of the trial
> and pre-trial motions reveals numerous instances in which Defendant
> complained about his counsel's performance and attempted to have
> counsel removed.  In each instance, Defendant claimed that counsel had
> not done any preparation, had not read any of the depositions or the
> transcripts from the previous trial, and was not planning on putting on any
> defense.
>
> At each of these instances, the Court conducted a hearing.  Counsel
> denied Defendant's allegations that he had not prepared or read the
> transcripts and depositions.  *See February 17, 1995 Hearing on Motion for
> New Counsel/Motion to Withdraw, pp. 8-9.*  Counsel further stated on the
> record that the conflicts between he and his client were due to differences
> of opinion regarding trial strategy.  *See 1995 Trial Transcript, pp. 187-88.*
> Defendant's retained attorney also advised the Court that the conflicts
> between Defendant and court-appointed counsel were over matters of trial
> strategy.  *See 1995 Trial Transcript, pp. 174-75.*  Strategic decisions
> relating to the conduct of the trial are in the province of the attorney.
>
> . . .
>
> An attorney's decisions regarding trial strategy will not be disturbed on a
> motion for post conviction relief.  *See Buford* v. *State,* 492 So. 2d 355 (Fla.
> 1986).  Although generally a determination that something was trial
> strategy cannot be made without an evidentiary hearing, *see Collins v.
> State,* 671 So. 2d 827 (Fla. 2d DCA 1996), in this case there are
> numerous instances in which counsel stated on the record that the

conflicts involved decisions on trial strategy.  Additionally, claims of
ineffective assistance of counsel generally cannot be considered on direct
appeal unless counsel's ineffectiveness is evident from the record.  *See
Loren v. State,* 601 So.2d 271 (Fla. 1st DCA 1992).  In this case,
Defendant argued the issue of ineffective assistance of counsel on appeal,
and there was a considerable amount of discussion within the trial record
regarding the issue because of Defendant's numerous allegations made
during and before trial.  Defendant's judgment and sentence were per
curiam affirmed by the Second District Court of Appeal.  As such, this
Court must conclude that the issues raised on appeal were considered
and decided on the merits. *See South Florida Hospital Corp. v. McCrec,*
118 So. 2d 25, 31 (Fla. 1960). However, on the issue of ineffective
assistance of counsel, the State both argued that the issue should not be
considered on appeal and argued the issue substantively.

Thus, this Court cannot determine whether the appellate court considered
the issue.  Therefore, Defendant's claims of ineffective assistance of
counsel will be addressed.

Counsel's alleged failure to follow Defendant's plan is not ineffective
assistance.  While Defendant was appointed co-counsel for the purpose of
having a voice in matters of strategy, this does not mean that Defendant's
choice of strategy must be adopted by lead counsel.  As Defendant is not
an attorney trained in criminal or trial procedure, counsel must ultimately
make the decisions in those areas.  The record also conclusively shows
that counsel did follow Defendant's direction in matters of trial strategy.
Counsel placed on record his opinion that the defense should not put on
witnesses, but that he was doing so against his better judgment on his
client's insistence.  *See 1995 Trial Transcript, pp. 473-74.*

The state court addressed each of the "ten points" of ineffective assistance, finding

each meritless (Respondent's Exhibit 9 at 4-10).  The state court's decision was neither

an unreasonable application of Strickland nor an unreasonable determination of the

facts.

The term "strategy" is broadly defined.  "By 'strategy,' we mean no more than this

concept:  trial counsel's course of conduct, that was neither directly prohibited by law

nor directly required by law, for obtaining a favorable result for his client."  Chandler v.

United States, 218 F.3d at 1314 n.14.  See also Felker v. Thomas, 52 F.3d 907, 912

(11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.") and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).  Usually, trial counsel must decide both strategy and tactics, such as deciding which witness to call or which defense to present.  See e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.' "), quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983), and Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (en banc). But the compromise fashioned by the trial court granted Gill more involvement in strategy determinations than is usual.  Consequently, Dayton presented defense witnesses even though the presentation was against his better judgment.

Dayton and Herman disagreed on which trial strategy to pursue,[12] a disagreement Gill fostered.[13]  Dayton's preferred strategy was the same used by

---

[12] For example, when the co-counsel compromise was reached, Gill informed the court, "From my observation, there seems to be somewhat of a conflict between these two attorneys as to what needs to be done in the first place."  Respondent's Exhibit 1 Vol. XVIII at 4242-43.

[13] For example, while moving for mistrial on third morning of trial, Dayton stated, "Mr. Herman and I approached the trial in very different ways.  Mr. Gill has encouraged every difference between trial counsel; for example, I see no advantage to constant objections to everything that smacks of a leading question.  It seems to me there is no advantage whatever to be gained by jumping up every time."  Respondent's Exhibit 1 Vol. XVIII at 3493-94.

defense counsel at Gill's first trial.  Gill's preferred strategy was to present defense

witnesses and to testify himself, an act defense counsel from the first trial characterized

as "suicide"[14] because, as predicted, the jury heard <u>Williams</u> rule testimony about Gill's

other acts of sexual abuse (Respondent's Exhibit 1 Vol. XIX at 3666-69).  Finally, the

trial court allowed Gill to place in the record his objections to Dayton's cross-

examination of the state witnesses, objections the trial court found were "insignificant"

(Respondent's Exhibit 1 Vol. XVIII at 3482).

Based on this record, the rejection of Gill's ten points of ineffective assistance of

counsel was neither an unreasonable application of <u>Strickland</u> nor an unreasonable

determination of the facts.  Ground Thirteen is meritless.

<u>Ground Five (B)</u>:

Gill alleges that Dayton was ineffective for not moving for a judgment of acquittal

based on the state's failure to prove when the offense was committed.  The state court

rejected this claim as follows (Respondent's Exhibit 9 at 17-18):

> A motion for judgment of acquittal was presented, and Defendant's
> retained counsel argued the motion.  *See 1995 Trial Transcript, pp. 438-
> 41.*  Although Mr. Herman did not argue the issue that Defendant presents
> here, the Defendant is not making an allegation of ineffective assistance of
> counsel against his retained counsel.  The record shows that the Court
> prevented Mr. Dayton from making any argument in support of the motion
> for judgment of acquittal on the basis that Mr. Herman was the one
> arguing the motion. *See 1995 Trial Transcript, pp. 449-50.* Therefore, this
> allegation against Mr. Dayton is groundless.
>
> Furthermore, the record shows that evidence was presented at trial
> placing the incidents within the hours of 7:30 a.m. and midnight, as

---

[14]  In granting Gill's motion for post-conviction relief and vacating the convictions from Gill's first
trial, the court found that defense counsel "did everything in his power to persuade Gill not to testify . . .
[because] it would be 'suicide' for Gill to testify."  Respondent's Exhibit 1 Vol. XIV ¶9 at 2680.

alleged in the statement of particulars.  Detective Jerkins testified that Marie told her that the incident occurred when her mother, Helen, left to go to the store.  *See 1995 Trial Transcript, p. 372.*  Marie also told Detective Jerkins that Theresa watched out the window for Helen to return.  *See id.*  Counsel at Defendant's first trial argued for judgment of acquittal based partially on the State's failure to prove that the incidents occurred within the time frame of the statement of particulars.  *See 1989 Trial Transcript, Vol. 7, p. 211.*  The Court denied the JOA, finding that the victims' testimony that they looked out the window for Helen Hampton to come home from the store was sufficient to go to the jury based on the fact that the vast majority of stores are closed by midnight.  *See 1989 Trial Transcript, Vol. 7, pp. 216-17.*

The evidence was the same in both trials, and the issue was previously argued unsuccessfully at Defendant's first trial.  Counsel cannot be considered ineffective for failing to raise an argument that, based on the record in the previous trial, would have [been] rejected.

To the extent that the Gill alleges Dayton was ineffective for not moving for a judgment of acquittal at the close of the state's case, the record supports the state court's rejecting this claim.  At the close of the state's case, Herman argued the motion for judgment of acquittal, not Dayton (Respondent's Exhibit 1 Vol. XVIII at 3502-31), and the trial court precluded Dayton from supplementing Herman's argument (Respondent's Exhibit 1 Vol. XVIII at 3513).

Gill also argues that Dayton was ineffective for not including this claim as a basis for a motion for judgment of acquittal at the close of all evidence.  Although included in Gill's petition for post-conviction relief, the state court's order fails to specifically address this part of the claim.  Nevertheless, Gill cannot meet Strickland's prejudice requirement because the state court found that sufficient evidence was presented for the jury to determine when the offense was committed.  Because Gill's allegation of ineffectiveness of Dayton is baseless and Gill asserts no claim of ineffective assistance of counsel against Herman, Ground Five, subpart B, is meritless.

Ground Five (C):

Gill alleges that Dayton was ineffective for failing to object to the prosecutor's closing argument, specifically the comment that Detective Jerkins's testimony established that the offense occurred on Saturday during the daylight hours, between 7:30 am and midnight, when no testimony was presented to establish that fact. The state court rejected this claim as follows (Respondent's Exhibit 1 Vol. 9 at 24-25):

> Defendant claims that the State, in closing argument, incorrectly stated that the testimony of Detective Bernadette Jerkins established that the offenses occurred within the time frame that the State is required to prove. The record shows that Detective Jerkins' testified that the date of occurrence was May 2, 1987. *See 1995 Trial Transcript, p. 372.* Detective Jerkins also testified that the offenses occurred when Helen Hampton left to go to the store. *See 1995 Trial Transcript, p. 372.* As previously established in the response to Defendant's ground 8, the time of the incidents was established to a sufficient degree to allow the jury to make the determination of whether they occurred within the time as required.
>
> The prosecutor's statement that the unrefuted testimony of Detective Jerkins was that "this offense occurred on Saturday during the daylight hours; after 7:30 and before midnight" is a fair interpretation of the evidence provided by the witness. It was not a direct quotation of her testimony. Therefore, as the State was not commenting on facts outside the evidence, counsel had no basis to object.

The post-conviction court found, as a matter of state evidentiary law, that the prosecutor's comments were a fair interpretation of Detective Jerkins's testimony. Consequently, no valid objection existed and counsel is not ineffective for not asserting a baseless objection.

Moreover, federal habeas review of the propriety of comments during a closing argument is limited. "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of

supervisory power.' " <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986), <u>quoting</u>

<u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974).  Improper prosecutorial remarks

compel habeas corpus relief only if the remarks are so egregious that the proceedings

are rendered fundamentally unfair.  <u>See</u> <u>Cargill v. Turpin</u>, 120 F3d 1366 (11th Cir.

1997).  "If a reviewing court is confident that, absent the improper remarks, the jury's

decision would have been no different, the proceeding cannot be said to have been

fundamentally unfair." <u>Tucker v. Kemp</u>, 802 F.2d 1293, 1296 (11th Cir. 1986) (<u>en banc</u>),

<u>cert. denied</u>, 480 U.S. 911 (1987).  Because the prosecutor's interpretation of the

evidence was supported by the trial testimony, the state court's rejecting this claim was

neither an unreasonable application of <u>Strickland</u> nor an unreasonable determination of

the facts.  Dayton was not ineffective for failing to object to the prosecutor's comments

during closing argument.

<u>Ground Seven</u>:

      Gill alleges that Dayton was ineffective for failing to challenge the admissibility of

Thelma Bass's testimony from the first trial without requiring a finding of unavailability.

The state court rejected this claim as follows (Respondent's Exhibit 1 Vol. 9 at 11-12):

> Defendant was given status of co-counsel to allow him to participate in strategy decisions.  *See 1995 Trial Transcript, p. 190.*  In addition to this ground, Defendant alleges several more times in his motion that counsel, referring specifically to Mr. Dayton, failed to object or refused to raise objections at Defendant's request.  The record tends to refute Defendant's allegation that counsel refused Defendant's requests for counsel to object. The record reflects numerous instances where both Mr. Dayton and Mr. Herman consulted with Defendant.  *See 1995 Trial Transcript, pp. 240, 241, 257, 338, 340, 414.*  The record also reflects that counsel frequently relayed objections and concerns raised by Defendant.  *See 1995 Trial Transcript, pp. 263, 285, 290, 345, 359, 383-86, 412, 462, 744.*  If Defendant, as co-counsel, wanted an objection raised, it appears from the

record that it would have been raised.  Nevertheless, the Court will
address Defendant's claims.

Under § 90.804(2)(a), Florida Statutes, the court is required to make a
finding that a witness is unavailable prior to allowing the admission of
hearsay testimony.  It does not require that a hearing be held prior to
making such a finding.  Both the State and defense were in agreement,
and stated in their motions, that the witness was unavailable.
Furthermore, as both the State and defense counsel requested that the
witness's testimony be read to the jury, defense counsel was not in a
position to object to the Court allowing the testimony to be admitted.

Defendant alleges that the Court found Thelma Bass' testimony to be
unreliable and untrustworthy after a proffer of her testimony in the first
trial. However, the Court allowed Thelma Bass to testify for the purpose of
showing that a report was made in response to the statements made to
her by one of the victims.  *See 1989 Trial Transcript, Vol. 4, pp. 116-18.*
Furthermore, Defendant states in his motion that "the defense now had
adequate rebuttal testimony to defeat her accusations that Marie was at
her house on May 3, 1987, telling her of the abuse." By Defendant's own
admission, the defense had every reason to want her testimony
presented. Additionally, through Thelma Bass' testimony, the defense was
able to present evidence of possible bias and a previous unsubstantiated
claim of abuse, as well as Thelma Bass' opinion that Marie imagines
things and fantasizes.  *See 1995 Trial Transcript, pp. 309-14.*

Therefore, Defendant has failed to show how counsel's performance was
deficient or how he was prejudiced by the admission of the testimony.

A thorough review of the record shows that Gill had ample opportunity to object

to a reading of Thelma Bass's testimony from the first trial.  Gill never recorded an

opposition to that strategy even though the trial court granted him considerable

involvement in determining trial strategy and an opportunity to place his objections on

the record.  The clear defense strategy was that the testimony was more helpful than

harmful, especially because the testimony questioned the credibility of the victim.  The

state court's decision was neither an unreasonable application of Strickland nor an

Case 8:04-cv-00140-SDM-MAP    Document 33    Filed 03/31/08    Page 40 of 53 PageID 397

unreasonable determination of the facts.  Gill fails to show either deficient performance

or prejudice.

Ground Eight:

        Ground Eight presents three interrelated claims of Dayton's alleged

ineffectiveness:  (a) failure to challenge the use of a "mock information,"[15] which forced

Gill to challenge the same facts against which he defended and was acquitted in the

first trial; (b)  failure to challenge the state's introducing evidence of crimes the jury had

acquitted Gill in the first trial; and (c) failure to challenge the indictment's charging

separate crimes in a single count. The state court rejected these claims as follows

(Respondent's Exhibit 9 at 12-14):

> Defendant makes several allegations of error with regard to the charges
> for which he was standing trial.  First, Defendant claims that he was being
> tried on charges for which he had been acquitted.  This claim is without
> merit. Defendant was indicted for eight counts of sexual battery.  Four
> counts were dismissed prior to or during Defendant's first trial, and four
> counts were submitted to the jury.  Defendant was found guilty of one
> count of sexual battery, one count of attempted sexual battery, and two
> counts of lewd and lascivious act in the presence of a child under the age
> of 16.
>
> Although Defendant claims he was found guilty of lewd and lascivious
> under § 800.04(3), Florida Statutes (1987), that was not the case.
> Defendant appears to believe that to be the case because the language of
> § 800.04(3) tracks the language on the verdict form.  However, that same
> language is also in the title of the statute.  The judgment reflects that
> Defendant was convicted under § 800.04, with no subsection specified.
> *See Judgment.*
>
> Defendant also alleges that the mock information used at his retrial
> contains multiple charges within a single count on each of the two lewd
> and lascivious counts.  This is also incorrect.  The mock information
> contains a single charge of lewd and lascivious under § 800.04(2), Florida

---

[15]  A fake charging document created so that the jury at the retrial would remain ignorant of the
original sexual battery charges the first jury acquitted Gill of committing.

Statutes (1987), which states that "[a]ny person who . . . commits an act defined as sexual battery under § 794.011(1)(h) upon any child under the age of 16 years . . . without committing the crime of sexual battery is guilty of a felony of the second degree . . . "  With only the definition of sexual battery under § 794.011(1)(h) and the specific facts and names properly added, counts two and three of the mock information track the language contained in § 800.04(2). Therefore, Defendant's allegation that more than one crime is alleged in each count is without merit.

However, because both victims were under the age of 12 at the time of the offense, Defendant cannot be charged under § 800.04(2).  *See Jozens v. State,* 649 So. 2d 322 (Fla. 1st DCA 1995).  Nevertheless, the mock information is not an actual charging document.  It was used only to prevent the jury from learning of the original charges in the indictment. Any error in it is harmless.  The facts underlying the charge of lewd and lascivious are the same regardless of what subsection was listed on the mock information.  The State was still required to prove the elements of the offense, and the jury was properly instructed as to those elements.

Even if the jury considered the mock information[,] Defendant has failed to show how he was prejudiced thereby.  If anything, it would be to the benefit of Defendant.  Under § 800.04(2), the State would be required to prove a greater degree of culpability on the part of Defendant than under either § 800.04(1) or (3).  Therefore, if the jury did consider the mock information and found that the State had proven the charges under § 800.04(2), that would certainly encompass a finding of guilt under the lesser required showing of handling and fondling, or committing a lewd and lascivious act in the presence of, the victims.

However, as the judgment and sentence reflects that Defendant was convicted of lewd and lascivious under § 800.04(2), and as Defendant cannot be convicted of that crime based on the ages of the victims, the State will be required to respond to that issue only.

Defendant's allegation that count one of the indictment and mock information contains two different charges is without merit.  Defendant claims that the language following the sexual battery statutory language, that it was done "in a lewd and lascivious manner," constitutes an error according to *Richards v. State,* 738 So. 2d 415 (Fla. 2d DCA 1999). However, Defendant has misinterpreted *Richards.*  In *Richards,* the court merely made a note of the surplus language and stated that, because of its resolution of that case, it need not determine whether that language transformed the offense of lewd and lascivious act into a lesser included offense of the charged sexual battery.  *See id.* at 416 n.2.  The court did

not state, or even imply, that the surplus language invalidated the information.

After conducting an evidentiary hearing, the state court granted Gill's Rule 3.850 motion for post-conviction relief and vacated Gill's two convictions for lewd and lascivious conduct:  "The Court finds that because the victims in this case were under the age of twelve (12) at the time of the offense, Defendant cannot be convicted under §800.04(2), Florida Statutes (1987).  *See Jozens v. State*, 649 So.2d 322 (Fla. 1st DCA 1995)."[16] Respondent's Exhibit 1 Vol. 22 at 4384.  Consequently, a claim of ineffective assistance of counsel that relies on the two lewd and lascivious convictions, both vacated by the state court, is moot.  Nevertheless, the rejection of Gill's claims of ineffective assistance of counsel alleged in Ground Eight, to the extent that the claims involve the remaining conviction of capital sexual battery, was not unreasonable.

The first jury decided that Gill's conduct charged in two counts of the indictment proved that Gill had committed lewd and lascivious conduct but not a capital sexual battery.  The second jury agreed and again convicted Gill of lewd and lascivious

---

[16]  Jozens, 649 So.2d 323-24, explains as follows:

Sections 794.011(2)-(5) of the sexual battery statute proscribe the commission of sexual battery as defined in subsection (1)(h) upon persons less than 12 years of age regardless of consent, and upon persons 12 years of age or older absent consent.  "Intercourse with a six-year-old child constitutes the crime of sexual battery regardless of unchastity or consent.  By definition such activity could not be lewd and lascivious conduct under section 800.04(1), (3) or (4)."  State v. Hightower, 509 So.2d 1078, 1079 (Fla.1987).

Under section 800.04(3), one cannot be convicted of a lewd and lascivious act committed upon a child under 12 years of age for conduct that also constitutes the crime of sexual battery under section 794.011.  Chaplin v. State, 622 So.2d 165 (Fla. 2d DCA 1993).  In the instant case, the victim was less than 12 years of age.  Any activity proscribed in section 794.011(1)(h), perpetrated upon a victim of less than twelve years of age necessarily constitutes the crime of sexual battery, pursuant to section 794.011(2), where consent is irrelevant, and by definition cannot be considered lewd and lascivious conduct under section 800.04.  Hightower.  Hence, if Jozens committed acts defined as sexual battery, . . . he could not be convicted of lewd and lascivious conduct under subsection (3) of section 800.04.

conduct.  The jury's decision was based on a credibility determination:  believe either the two girls and the other state witnesses or Gill's testimony and his witnesses, but not both.  The jury rejected Gill's version of the events.

One of Gill's claims, that he was forced to defend against the same facts the first jury had acquitted Gill of committing, is ludicrous; the facts never change, only the name of the crime the facts prove was committed.  Gill was not acquitted of having committed certain facts.  The first jury's acquitting Gill of capital sexual battery was not because the jury determined that Gill committed no conduct—that is, the jury found that the sexual abuse of the two young girls was committed by someone else—but that Gill's conduct was lewd and lascivious and not capital sexual battery as state law defines each crime. The state court found, as a matter of state law, that the "mock information" was drafted in conformity with the applicable statute in effect at the time, but the state simply failed to charge Gill under the proper statutory provision. The judgment (Respondent's Exhibit 1 Vol. XV at 2912) shows that Gill was convicted of committing a lewd and lascivious act as defined in section 800.04(2), Florida Statutes (1987).  Consequently, Gill was convicted of having committed a lewd and lascivious offense, defined as "[a]ny person who . . . commits an act defined as sexual battery under § 794.011(1)(h) upon any child under the age of 16 years . . . without committing the crime of sexual battery . . . ."  As explained in Jozens v. State,[17] a person cannot fail to commit the crime of sexual battery if the battery is committed upon a child under twelve years of age.  The state court correctly found that Gill's conduct was lewd and lascivious as it was defined in section 800.04(1) or (3), but not as charged in section 800.04(2). The two lewd and

---

[17] See n.16.

lascivious convictions were vacated not because Gill was not the person who committed

the acts, not because Gill's conduct was not lewd and lascivious, but because the

"mock information" cited the incorrect paragraph.

<u>Ground Nine</u>:

  Gill alleges that Dayton was ineffective for failing to assert a double jeopardy

objection, specifically that the state charged multiple crimes for conduct occurring in a

single episode.  The state court rejected this ground as follows (Respondent's Exhibit 9

at 23):

> The constitutional test to determine whether multiple punishments are
> double jeopardy violations was established in *Blockburger v. U.S.,* 284
> U.S 299, 304 (1932).  Under *Blockburger,* even if a defendant were
> charged under two separate statutes for the same act, it would not be a
> double jeopardy violation unless they both required identical facts.  *See id.*
> In this case, Defendant was charged for multiple separate acts occurring
> during a single criminal episode.
>
> The Florida legislature has made clear its intent that a defendant be
> convicted and sentenced "for each criminal offense committed in the
> course of one criminal episode or transaction."  *See § 775.21 (4)(b),
> Florida Statutes.*  The statute defines offenses as separate if each offense
> requires proof of an element that the other does not.  As each of
> Defendant's offenses required proof of an element that the other does not,
> Defendant was correctly charged with each separate offense.
>
> Therefore, counsel had no legal basis to object to the charges.  Counsel is
> not required to raise every possible issue, no matter how frivolous.
> Accordingly, counsel's failure to raise the issue cannot constitute
> ineffective assistance of counsel.

  Gill argues in his federal petition that "the alleged placing of Gill's penis in or in

union with [M.H.]'s vagina and anus during the same time or criminal episode

constitutes only an <u>alternative means</u> of committing a single or the same crime . . ."

(emphasis original).  The state court correctly ruled that an objection based on double

- 44 -

jeopardy was not supported by Florida law[18] and, therefore, counsel's performance was neither deficient nor prejudicial.  The state court's decision was not unreasonable.

Ground Ten:

Gill alleges in Ground Ten that trial counsel was ineffective for failing to request a jury instruction providing a common dictionary definition of "vagina."  The state court rejected this claim as follows (Respondent's Exhibit 9 at 21-22):

> There was considerable discussion and argument from both sides as to the definition and location of the vagina.  *See Trial Transcript, pp. 440-49, 695-700, 705-08.*  Furthermore, Dr. Simmons testified that the vagina was located behind the hymen.  *See Trial Transcript, pp. 406-07.*  The main point of contention did not revolve around the definition of the vagina, but around whether sexual battery as defined by the Florida legislature was possible through "union" with the vagina absent damage to the hymen.  Therefore, in addition to common knowledge, the jury was presented with sufficient information regarding the definition of vagina, and a dictionary

_____

[18] For example,  Saavedra v. State, 576 So.2d 953, 956-57 (Fla. 1st DCA 1991), approved, 622 So.2d 952 (Fla. 1993), cert. denied, 510 U.S. 1080 (1994):

> The sexual battery statute may be violated in multiple, alternative ways, i.e., "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." § 794.011(1)(g) Fla.Stat. (1987).  Sexual battery of a separate character and type requiring different elements of proof warrant multiple punishments.  See Duke v. State, 444 So.2d 492 (Fla. 2nd DCA ) (vaginal penetration followed a moment later by anal penetration), aff'd, 456 So.2d 893 (Fla.1984); Grunzel v. State, 484 So.2d 97 (Fla. 1st DCA 1986) (cunnilingus followed a few seconds later by vaginal intercourse); Begley v. State, 483 So.2d 70 (Fla. 4th DCA 1986) (attempted vaginal intercourse, attempted cunnilingus, fellatio, committed over two week period); Bass v. State,  380 So.2d 1181 (Fla. 5th DCA 1980) (oral sex followed by rape)."

and Schwenn v. State, 898 So.2d 1130, 1132 (Fla. 4th DCA 2005):

> Schwenn contends that conviction and sentencing for all eight acts of sexual battery violated double jeopardy because there was no spatial or temporal break between the acts. We disagree.  Here, the sequence of sexual batteries on the victim was:  (1) vaginal penetration; (2) anal penetration; (3) vaginal penetration; (4) cunnilingus; (5) anal penetration; (6) fellatio; (7) vaginal penetration; and (8) anal penetration. Even though there were three events of vaginal penetration and three of anal penetration, each was separated from a similar event by another type of sexual battery. Thus, they were distinct in character and temporally separated, which gave the defendant sufficient time between each penetration to reflect and form a new criminal intent.

definition would not be dispositive of the issue of whether a sexual battery occurred.

[I]n the case of sexual battery using an object other than a penis, penetration must be proven rather than simply union.  *See id.; see also § 774.011(1)(h), Florida Statutes.*  As previously noted, a sexual battery can occur if the defendant's penis comes into contact with, but does not penetrate, the hymen.  *See Richards,* 738 So. 2d at 419.

Dr. Simmons used diagrams to supplement his testimony, in which he explained the relevant human female anatomy (Respondent's Exhibit 1 Vol. XVIII at 3465-71).  Gill has not shown that the jury required a dictionary definition of "vagina."  Based on the state court's statements above, the trial court would have denied trial counsel's request for a jury instruction.  Gill has not shown that his trial was unfair absent the instruction.  See  Watson v. Dugger, 945 F.2d 367, 371 (11th Cir. 1991) ("A federal court may find a due process violation if the failure to give additional requested instructions beyond those necessary for the offense makes the trial 'fundamentally unfair.' ").

Ground Eleven:

Gill alleges that Dayton was ineffective for not objecting to the prosecutor's eliciting false testimony from Dr. Simmons.  The state court rejected this claim as follows (Respondent's Exhibit 9 at 18-19):

Defendant acknowledges in his motion that the defense theory of how [M.H.] received her injuries is different from that of the investigators from the Sheriff's Office.  Defendant claims that all of [M.H.]'s injuries, including her vaginal excoriations, were the result of her falling on a picnic bench.  However, the prosecution's theory of how [M.H.] received the vaginal excoriations are from sexual abuse committed by Defendant.  Because Defendant claimed that [M.H.] injured herself by falling on a picnic table and presented witnesses to support his theory does not mean that the prosecution must adopt Defendant's theory.

Furthermore, the evidence presented showed that both [M.H.] and [T.S.] had similar vaginal excoriations.  *See 1995 Trial Transcript, pp. 392-93.*

There was no evidence presented by the defense to show that [T.S.] had a similar accident that would explain her injuries.  *See 1995 Trial Transcript*, pp. 595-96.  Therefore, the prosecution's solicitation of testimony from Dr. Simmons regarding how [M.H.] received her injuries is a fair presentation of the State's theory.  The Defendant had the opportunity to, and did, present his theory to the jury of how [M.H.]'s injuries occurred.

Gill's claim of ineffective assistance of counsel is ludicrous.  Gill fails to show that a valid objection existed, unless, as the state court indicated, the prosecution is both required to accept a defendant's theory of the case and precluded from presenting a different interpretation of the evidence.

Grounds Twelve and Fourteen:

These two grounds allege that Dayton was ineffective for failing to adequately impeach state witnesses M.H. (Ground Twelve) and Detective Jerkins (Ground Fourteen).  The state court rejected the claim in Ground Twelve as follows (Respondent's Exhibit 9 at 15-16 and 23-24):

Defendant was charged by indictment with offenses occurring during the period of May 1, 1987 and May 4, 1987.  Therefore, whether the seven and eight year old victims testified that the offenses occurred on May 1 or May 2 is irrelevant.  The fact that [M.H.] testified at the first trial that the crime occurred on Friday, which would have been May 1, 1987, and testified at the second trial eight years later that she did not remember the date is not inconsistent testimony.  Furthermore, as already noted, [M.H.] also testified at the first trial that she did not remember when these incidents occurred.  It was only on rebuttal, after the State spoke to [M.H.] and attempted to refresh her memory by using a calendar and working back using events, that she was able to testify that it was Friday.  *See 1989 Trial Transcript, Vol. 9, p. 89.*

During that same rebuttal testimony, [M.H.] also said no when asked by the State if Defendant had touched her butt with his penis.  *See 1989 Trial Transcript, Vol 9, p. 114.*  However, had counsel attempted to use that testimony to impeach [M.H.], the State would have been able to bring in the numerous times she testified that Defendant had touched her butt with

his penis.  *See 1989 Trial Transcript, Vol 1, pp. 79, 81, 98, 99, 102, 112.*
Therefore, counsel was not deficient for failing to impeach on this matter.

As to the question of whether or not [T.S.]  went on the fishing trip on May
2, 1987, Defendant states that counsel should have impeached [M.H.] on
her testimony at Defendant's first trial that [T.S.] did go on the fishing trip.
Defendant's allegations regarding this issue amount to an argument that if,
[T.S.] went on the fishing trip, he did not have the opportunity to commit
the offenses in question.  Defendant acknowledges that both [T.S.] and
[M.H.] testified at his second trial that [T.S.] did not go on the trip.
Defendant is now improperly arguing that the jury's verdict was in conflict
with the evidence presented.

. . .

Defendant's allegation that counsel was ineffective for failing to object to
the Court disallowing him to conduct a proper examination of Marie is
without merit.  Defendant refers to three objections raised by the State
during counsel's examination of Marie.  All three objections were properly
raised and sustained.  *See 1995 Trial Transcript, pp. 559-61.*  As counsel
had no basis to object to the Court's actions, counsel cannot be defective
for failing to do so.

The state court rejected the claim in Ground Fourteen as follows (Respondent's

Exhibit 9 at 16-17):

Defendant's current allegation is in direct contradiction to his statement in
his appellate brief, that "[d]efense counsel brought to the court's attention
numerous inconsistencies between the testimony made by the victims and
that of Detective Jerkins."  *See Appellant's Second* Amended Initial Brief,
p. 38.  The Court is not relying exclusively on Defendant's appellate brief
to refute his claim because it is not an actual part of the Court's record in
this case.  However, the Court has referred to the brief for two reasons.
First, Defendant has already unsuccessfully argued . . . against the Court's
admission of Detective Jerkins' testimony on appeal.  Although Defendant
now claims that the testimony was admitted because counsel was
ineffective for failing to bring to the Court's attention those inconsistencies
that would have prevented its admission, the underlying issue is the same.
Second, Defendant's appellate brief cites to that portion of the record
which refutes his claim.  Following the proffered testimony of Detective
Jerkins, counsel argued against allowing the testimony by providing the
Court with examples of inconsistencies.  *See 1995 Trial Transcript, pp.
289-92.*

- 48 -

. . .

Defendant unsuccessfully appealed the issue of the admissibility of the child hearsay testimony of Bernadette Jerkins.  Therefore, even if counsel failed to object, Defendant has failed to show how he was prejudiced by the alleged failure.  Moreover, as previously shown, counsel did object to the admission of Bernadette Jerkins' testimony following the proffer.  *See 1995 Trial Transcript, pp. 289-92.*  The Court ruled against him and allowed the testimony to be admitted.  *See 1995 Trial Transcript, p. 292.*

Gill cannot show that the state court's rejecting his claims of ineffective

assistance of counsel was unreasonable.  For example, the trial court found that Gill's

objections were insignificant.

THE DEFENDANT:  Your Honor, I think that, as you probably well imagine, that I am being severely prejudiced in my trial by a totally ineffective counsel . . . .

THE COURT:  What specifically are you referring to?

THE DEFENDANT:  Well, mainly to all instances, every witness, he had failed to impeach the witness.  We have an abundance of evidence here that can impeach any one of the witnesses.  He has failed to use it.

THE COURT:  What specific evidence are you referring to?

THE DEFENDANT:  Well . . . let's just take Bernadette Jerkins . . . .  We have an abundance of police reports and arrest records that can prove that her testimony that she gave this time was totally inconsistent with the testimony she gave before.  The witness Helen Hampton, the same thing; witness [T.S.], the same thing.  All of these witnesses we have an abundance of material, such as the other trial transcripts, that could be used to impeach them . . . .

THE COURT:  I'm going to let Mr. Dayton have an opportunity to respond.  But before we do that, was there anything else specifically you'd like to mention at this time, not just generalities, but any other specifics?

THE DEFENDANT:  These things that I'm referring to are a multitude of things, Your Honor.  I could go on for a half hour on specifics, but I'm sure that you can see by the cross-examination that it's not the proper way to do things . . . especially when we have all this stuff here to be used.

. . .

THE COURT:  Well, let me just ask you this.  You've had opportunities during the middle of cross-examination where we've waited for you patiently to meet with your lawyers and get out whatever it is you're referring to.  So you've had opportunity to inform him of things.

THE DEFENDANT:  I have.  I have asked Mr. Dayton at least 25 times during the last testimony that's happened here to object, to show this.  He has done none of these things. . . .

THE COURT:  I'll let Mr. Dayton respond.  Mr. Dayton, anything you'd like to not?

MR. DAYTON:  I am somewhat at a loss to see how the things Mr. Gill is pointing out, particularly with regards to Deputy Jerkins, would be of any great use on cross-examination or for impeachment.

. . .

THE DEFENDANT:  May I respond to what he said?  . . .  For an example, let's take the testimony of [M.H.].  At the previous trial, [M.H.] testified without any doubt at all that this event occurred on Friday of May the 1st between 3:00 and 5:00 o'clock, before it got dark outside.  This is the testimony that has sent me to prison for seven years.  Now all of a sudden, the date has changed.  Now the State is attempting to prove that this dte happened on May 2nd.  My attorney has not even bothered to impeach the witness.

THE COURT:  Let me ask you this.  What would be the value whether it happened on May 1st or May 2nd?

. . .

I think what we have here is a red herring, quite honestly.  In view of the testimony, the credible testimony to this juncture, the specific faults you have noted are meaningless, not significant, not enough to make a substantial difference.  Certainly not enough to create any reasonable objective evidence of incompetence or ineffective assistance of counsel.  So I'm going to deny your issue of any relief at this point.

Respondent's Exhibit 1 Vol. XVIII at 3476-82.  Based on this record, the state court held

that Dayton's representation was neither deficient nor prejudicial.  Gill has not shown

that the state court's decision was unreasonable.

<u>Ground Fifteen</u>:

Gill alleges that Dayton was ineffective for not objecting to hearsay and a medical

diagnosis both admitted through the testimony of Dr. Simmons.  The state court rejected

these claims as follows (Respondent's Exhibit 9 at 19-20):

> With regard to [the hearsay], Defendant acknowledges that he briefed this
> issue on direct appeal, but states that the appellate court did not have
> jurisdiction to review the issue because it was not preserved by objection
> at trial.  However, counsel did object to the introduction of the hearsay
> testimony being introduced.  *See 1995 Trial Transcript, pp. 395-96, 401.*
> Therefore, this issue has already been considered and rejected on direct
> appeal.  *See Mandate and Opinion.*  Defendant cannot relitigate this issue
> in a motion for post conviction relief.

> With regard to [the medical diagnosis], Defendant claims that Dr.
> Simmons should not have been permitted to testify that the vestibular area
> of [T.S.]'s sexual organ was hyperemic.  Defendant incorrectly asserts that
> he "was not on trial for any crime involving [T.S.]'s vestibular area of the
> vagina and that he had been acquitted of that crime in his first trial."
> Defendant was found guilty of lewd and lascivious conduct for rubbing his
> penis against [T.S.]'s vaginal area until he ejaculated.  *See 1989 Trial
> Transcript, Vol. II, p. 24.*

The record supports the state court's finding that Gill's counsel objected to the

hearsay testimony (Respondent's Exhibit 1 Vol. XVIII at 3459-60 and 3465).  Gill's

challenge to the medical diagnosis is baseless as the state court determined.

Consequently, the state courts decision was not unreasonable and trial counsel's

performance was not deficient.

Ground Sixteen:

Gill alleges that Dayton was ineffective for not objecting to the trial court's

precluding the defense from presenting a serologist as a defense witness.  The state

court rejected this claim as follows (Respondent's Exhibit 9 at 20-21):

> Defendant is referring to an FDLE serologist called by the defense to
> testify that no semen was found on the swabs collected by the Sexual
> Assault Victim Examination (SAVE) team after the incidents were reported
> to police.  The State objected to the witness testifying on the basis that no
> predicate testimony regarding the collection of the swabs had been
> presented.  *See 1995 Trial Transcript, p. 469.*  It appears from the record
> that counsel mistakenly believed that the witness was a member of the
> SAVE team and had collected the swabs.  *See 1995 Trial Transcript, p.
> 473.*  After argument, counsel chose not to call the witness.  The Court
> had not yet made a ruling as to the admissibility of the witness's testimony;
> therefore, counsel had no basis to object.  *See 1995 Trial Transcript, pp.
> 472-74.*
>
> Defendant also claims that counsel failed to point out that a predicate had
> been laid for the admission of the witness' testimony by way of testimony
> that he had ejaculated on the victims.  However, semen on the outside of
> a victim's body is not a sufficient predicate to testimony about swabs taken
> from the vagina, anus, and mouth of a victim.  The lack of semen in an
> exam done two days after the incident would not be exculpatory,
> particularly where, as here, the testimony before the jury was that
> Defendant had ejaculated on, rather than in, the victims' bodies and had
> either licked or wiped it off.  *See 1995 Trial Transcript, pp. 372, 375.*  As
> Defendant is aware, this witness testified at Defendant's first trial that no
> semen was found on the swabs, *see 1989 Trial Transcript, Vol. 9, pp. 77-
> 82,* but Defendant was convicted nevertheless.  Therefore, even if counsel
> was mistaken as to the witness's role, Defendant has failed to show how
> he was prejudiced without the testimony of the serologist.

Based on the state court's findings, Dayton's representation was neither deficient

nor prejudicial.  Gill has not shown that the state court's decision was unreasonable.

**CONCLUSION**

The trial court afforded Gill more process than he was due, especially the mixing of Gill's rights to self-representation and counsel.  The state court's decision to keep Gill imprisoned was neither contrary to controlling Supreme Court precedent, nor an unreasonable application of Supreme Court precedent, and nor an unreasonable determination of the facts.

Accordingly, Gill's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Gill and close this action.

ORDERED in Tampa, Florida, on March 31, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE